| | |
|---|---|
| 1 | BENJAMIN B. WAGNER |
| | United States Attorney |
| 2 | SEAN C. FLYNN |
| | Assistant U.S. Attorney |
| 3 | 501 "I" Street, Suite 10-100 |
| | Sacramento, California 95814 |
| 4 | Telephone: (916) 554-2700 |

**FILED**

JUL 0 9 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CR. No. 09-0458-EJG |
|---|---|
| Plaintiff, | ) PLEA AGREEMENT PURSUANT TO |
| | ) FED. R. CRIM. P. 11(c)(1)(C) |
| v. | ) |
| WILLIAM CODY AMBORD, | ) |
| | ) DATE: July 9, 2010 |
| Defendant. | ) TIME: 10:00 a.m. |
| | ) COURT: Hon. Edward J. Garcia |

I.

**INTRODUCTION**

**A. Scope of Agreement**: The Indictment in this case charges the defendant with engaging in interstate communications to entice a minor to engage in an illegal sexual act, in violation of 18 U.S.C. § 2422(b) (Count One), and with possession of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Two). This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this matter. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local

1

1 | prosecuting, administrative, or regulatory authorities.

**B. Rule 11(c)(1)(C) Specific Sentence Agreement:** The government and the defendant agree that a specific sentence, set forth below in paragraph VI(D), would be appropriate in this case (before any reduction for cooperation). Consequently, this plea agreement is being offered to the Court pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Under the provisions of Rule 11(c)(3), the Court may accept or reject the plea agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the Court accepts the plea agreement, the Court will inform the defendant that it will embody in the judgment and sentence the disposition provided for in this plea agreement. If the Court rejects the plea agreement, the Court shall so advise the defendant, allow the defendant the opportunity to withdraw his plea, and advise him that if he persists in a guilty plea the disposition of the case may be less favorable to him than is contemplated by this plea agreement.

## II.

### DEFENDANT'S OBLIGATIONS

**A. Guilty Plea:** The defendant will plead guilty to Count One of the October 22, 2009 Indictment in this matter charging him with engaging in interstate communications to entice a minor to engage in an illegal sexual act, in violation of 18 U.S.C. § 2422(b). The defendant agrees that he is, in fact, guilty of that charge and that the facts set forth in the Factual Basis attached hereto as <u>Exhibit A</u> are true and accurate.

**B. Restitution:** The Mandatory Victim Restitution Act requires

the Court to order restitution to the victims of certain offenses. If such restitution is ordered, payment should be by cashier's or certified check made payable to the Clerk of the Court. The defendant understands that this Plea Agreement is voidable by the government if he fails to pay the restitution as ordered by the Court. Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

**C. Fine:** The defendant agrees to pay a criminal fine, unless he can establish he lacks both the present and future ability to pay a fine.

**D. Special Assessment:** The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this Plea Agreement is voidable by the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**E. Sex Registration/DNA Testing:** The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act (SORNA), the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that

the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

The defendant also understands and agrees that as a consequence of his conviction he will be ordered to submit to the collection of his DNA.

**F. Agreement to Cooperate:** The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government. As used in this Agreement, "cooperation" requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) to produce voluntarily any and all documents, records, or other tangible evidence requested by the government; (4) not to participate in any criminal activity while cooperating with the government; and (5) to disclose to the government the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal

4

activities or the illegal activities of any conspirators.

If the defendant commits any crimes or if any of the defendant's statements or testimony prove to be knowingly false, misleading, or materially incomplete, or if the defendant otherwise violates this Plea Agreement in any way, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. The determination whether the defendant has violated the Plea Agreement will be under a probable cause standard. If the defendant violates the Plea Agreement, he shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to perjury, false statements, and obstruction of justice. Because disclosures pursuant to this Agreement will constitute a waiver of the Fifth Amendment privilege against compulsory self-incrimination, any such prosecution may be premised on statements and/or information provided by the defendant. Moreover, any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this Agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of any such prosecutions. The defendant agrees to waive all defenses based on the statute of limitations or delay of prosecution with respect to any prosecutions that are not time-barred as of the date of this Agreement.

If it is determined that the defendant has violated any provision of this Agreement or if the defendant successfully moves to withdraw his plea: (1) all statements made by the defendant to

the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this Agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(e)(6) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this Agreement, or any leads derived therefrom, should be suppressed. By signing this Agreement, the defendant waives any and all rights in the foregoing respects.

### III.

### THE GOVERNMENT'S OBLIGATIONS

**A. Recommendations:**

    **1. Incarceration Range:** The Government will recommend that the defendant be sentenced to a term of incarceration of 120 months, prior to a potential motion by the government under U.S.S.G. § 5K1.1 for a reduction in sentence to reflect the defendant's substantial assistance, as stipulated to by the parties in Section VI of this plea agreement.

    **2. Acceptance of Responsibility:** If the United States Probation Office determines that a three-level reduction in defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under §3E1.1(b), so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-

sentence report, is truthful and candid with the probation officer, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

   **3. Reduction of Sentence for Cooperation:** The Government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 25% if he provides substantial assistance to the Government, pursuant to U.S.S.G. § 5K1.1. The defendant understands that he must comply with paragraph II(F) of this plea agreement. The defendant understands that it is within the sole and exclusive discretion of the Government to determine whether the defendant has provided substantial assistance. The defendant understands that the Government may recommend a reduction in his sentence of less than 25%, or no reduction at all, depending on the level of assistance the Government determines that the defendant has provided. The defendant understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this plea agreement confers no right upon the defendant to require that the Government make a 5K1.1 motion. In particular, the defendant agrees not to try to file a motion to withdraw his plea based on the fact that the Government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate. The defendant further understands that even if the defendant provides information pursuant to the cooperation agreement, unless that information leads to the investigation and successful prosecution of another, the government is under no obligation to recommend any downward

1 | departure in his sentence, including a recommendation for a sentence
2 | below the mandatory minimum sentence he faces.

3 | In the event the government recommends a downward departure in
4 | return for defendant's substantial assistance, the defendant agrees
5 | not to argue for any additional reduction below that recommended by
6 | the government. Failure to comply with this term shall render this
7 | agreement null and void.

8 | **4. Dismissals:** The government agrees to move, at the
9 | time of sentencing to dismiss without prejudice the remaining count
10 | in the Indictment (Count Two). The government also agrees not to
11 | reinstate any dismissed count except as provided in part VII(B)

## IV.

### ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, engaging in interstate communications to entice a minor to engage in an illegal sexual act, in violation of 18 U.S.C. § 2422(b):

First, that the defendant knowingly used a facility and means of interstate commerce (a computer connected to the Internet) to persuade, induce, entice or coerce an individual to engage in sexual activity;

Second, that the defendant believed that such individual was less than eighteen years of age; and

Third, that if the sexual activity had occurred, the defendant could have been charged with a criminal offense under the laws of the State of California.

# V.

## MAXIMUM SENTENCE

**A. Maximum Penalty:** The maximum sentence that the Court can impose for engaging in interstate communications to entice a minor to engage in an illegal sexual act as alleged in Count One is life imprisonment, a lifetime period of supervised release, a fine of $250,000 and a special assessment of $100.

**B. Violations of Supervised Release:** The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to five additional years of imprisonment. If the defendant commits certain specified felonies against children delineated in 18 U.S.C. § 3583(k) while on supervised release, the five-year limit does not apply and the court is required to revoke supervised release and impose a sentence of imprisonment of at least five years.

# VI.

## SENTENCING DETERMINATION

**A. Statutory Authority:** The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by <u>United States v. Booker</u> and <u>United States v. Fanfan</u>) and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory Guidelines sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from

9

the Guidelines sentencing range (either above or below the Guidelines sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B. Mandatory Minimum Sentence:** The defendant recognizes that the minimum sentence prescribed by 18 U.S.C. § 2422(b) is ten years imprisonment.

**C. Stipulations Affecting Guidelines Calculations:** The parties stipulate that the defendant is to be sentenced under the sentencing provisions of the United States Sentencing Guidelines. The parties also stipulate that the defendant's offense level is to be computed in accordance with U.S.S.G. §§ 2G1.3. The government and the defendant further agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate and agree to the following:

**1. Applicable Guidelines Section:** With respect to the charge of engaging in interstate communications to entice a minor to engage in an illegal sexual act, the applicable guidelines section is U.S.S.G. § 2G1.3.

**2. Base Offense Level:** Pursuant to both U.S.S.G. § 2G1.3(a)(3) the defendant's base offense level is 28 since he is pleading to a violation of 18 U.S.C. § 2422(b).

**3. Specific Offense Characteristic:** Pursuant to U.S.S.G. § 2G1.3(b)(3), there is a two-level enhancement to the base offense

level because the offense involved the use of a computer. A further two-level enhancement is applicable pursuant to U.S.S.G. § 2G1.3(b)(2) because he misrepresented his identity (age) to the minor victim in an effort to entice her to engage in prohibited sexual conduct. See U.S.S.G. § 2G1.3 cmt. 3(A) (misrepresentation of age qualifies for enhancement).

    **4. Acceptance of Responsibility:** See paragraph III(A)(2) above.

    **5. Total Offense Level:** Pursuant to the foregoing stipulations, and assuming the defendant accepts responsibility for his conduct under U.S.S.G. § 3E1.1, the defendant's total adjusted offense level is 29.

    **6. Criminal History:** The parties agree that the defendant's criminal history is to be determined by the Court.

    **7. Departures or Other Enhancements or Reductions:** The parties stipulate and agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments or cross-references, other than those contemplated in the foregoing stipulations. Other than a potential motion by the government for a reduction in sentence pursuant to U.S.S.G. § 5K1.1, both parties stipulate and agree that neither party will move for, or argue in support of, any departure from the Sentencing Guidelines. Furthermore, neither party will seek any deviance or variance from the Sentencing Guidelines under 18 U.S.C. § 3553(a), United States v. Booker, and United States v. Fanfan, 543 U.S. 220, 125 S.Ct. 738 (2005). If either party breaches this provision, the other party shall be relieved of all of its obligations under this plea and cooperation agreement.

**D. Specific Sentence Agreement Under Rule 11(c)(1)(C):**

Pursuant to Rule 11(c)(1)(C), the parties specifically agree that a sentence of 120 months, the mandatory-minimum sentence provided by 18 U.S.C. § 2422(b), is the appropriate sentence in this case, prior to any motion by the government under U.S.S.G. § 5K1.1 for a reduction in sentence to reflect the defendant's substantial assistance.

If the Court decides that a sentence of more than 120 months is appropriate for the defendant, the defendant has the right to withdraw his guilty plea and proceed without the benefits of this agreement. If the Court rejects the plea agreement, it shall advise the defendant of that fact, allow the defendant the opportunity to withdraw his plea, and advise him that if he persists in a guilty plea the disposition of the case may be less favorable to him than is contemplated by this agreement.

## VII.

## WAIVERS

**A. Waiver of Constitutional Rights:** The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

**B. Waiver of Appeal and Collateral Attack:** The defendant understands that the law gives him a right to appeal his conviction and sentence. He agrees as part of his plea, however, to give up

the right to appeal his conviction and the right to appeal any aspect of the sentence imposed in this case so long as the sentence is no longer than the top of the Sentencing Guidelines range determined by the Court consistent with the stipulations set forth in this Plea Agreement. Defendant specifically gives up his right to appeal any order of restitution the Court may impose.

Regardless of the sentence he receives, the defendant also gives up any right he may have to bring a post-appeal attack on his conviction or his sentence. He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

If the defendant ever attempts to vacate his plea, dismiss the underlying charge, or reduce or set aside his sentence on the charge to which he is pleading guilty, the government shall have the right (1) to prosecute the defendant on the count to which he pleaded guilty; and (2) to file any new charges that would otherwise be barred by this Plea Agreement. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision. In particular, he agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

**C. Waiver of Attorneys' Fees and Costs:** The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other

13

litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Plea Agreement and any charges previously dismissed).

**D. Waiver of DNA Testing:** Defendant has been advised that the government has in its possession items of physical evidence that could be subjected to DNA testing. The items were seized from the defendant and are identified in the pages of discovery that have been provided to defendant's counsel. The defendant understands that the government does not intend to conduct DNA testing of any of these items. Defendant understands that, before entering his guilty plea pursuant to this Plea Agreement, he could request DNA testing of evidence in this case. The defendant further understands that, with respect to the offense to which he is pleading guilty pursuant to this Plea Agreement, he would have the right to request DNA testing of evidence after conviction under the conditions specified in 18 U.S.C. § 3600. Knowing and understanding his right to request DNA testing, the defendant knowingly and voluntarily gives up that right with respect to both the specific materials identified in the discovery, as well as any other items of evidence there may be in this case that might be amenable to DNA testing. The defendant understands and acknowledges that by giving up this right, he is giving up any ability to request DNA testing of evidence in this case in the current proceeding, in any proceeding after conviction under 18 U.S.C. § 3600, and in any other proceeding of any type. The defendant further understands and acknowledges that by giving up this right, he will never have another opportunity to have the

14

evidence in this case, whether or not listed above, submitted for DNA testing, or to employ the results of DNA testing to support a claim that defendant is innocent of the offense to which he is pleading guilty.

## VIII.
### ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.
### APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this Plea Agreement and have discussed it fully with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

DATED: 7/9/10

Benjamin Galloway, Esq.
Attorney for Defendant

**B. Defendant:** I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in

15

this Plea Agreement.  In addition, no one has threatened or forced me in any way to enter into this Plea Agreement.  Finally, I am satisfied with the representation of my attorney in this case.

DATED: 7/9/10                              X [signature]
                                           WILLIAM CODY AMBORD
                                           Defendant

**C.  Attorney for United States:**  I accept and agree to this Plea Agreement on behalf of the government.

DATED: 7/9/10                              BENJAMIN B. WAGNER
                                           United States Attorney

                                           By: [signature]
                                           SEAN C. FLYNN
                                           Assistant U.S. Attorney

**EXHIBIT "A"**
**Factual Basis for Plea**

At trial, the government would prove the following facts beyond a reasonable doubt:

In February of 2009, Defendant William Cody Ambord ("Ambord") was arrested at a Motel 6 in Sacramento after he had planned to travel from the Redding, California area to meet and have intercourse with a 15-year old girl from Roseville, D.S. - a person with whom Ambord had been having an online dating relationship for almost a year. D.S.'s parents discovered the relationship in 2008, and had attempted to prevent her from communicating with Ambord, however, D.S. continued "chatting" and speaking with Ambord surreptitiously.

In subsequent statements to officers from the Sacramento Police Department and the Placer County Sheriff's Department, D.S. confirmed that she and Ambord were in a "dating relationship," although she had never met him in person. D.S. stated that Ambord first told her online that he was 17, and eventually said he was 21. He was actually 25 at the time. D.S.'s parents voluntarily turned over their home computer and D.S.'s cell phone to authorities, and forensic analysis of those items has revealed a large volume of text messages and online chatting between Ambord and D.S. over a substantial period of time.

During their online conversations, which were facilitated by a means of interstate communication, Ambord repeatedly talked about wanting to engage in various sexual acts with D.S. In her statement to law enforcement, D.S. also disclosed that over the course of the previous months Ambord had frequently masturbated to her over his computer's webcam, and had also sent her numerous pictures of his genitals via the internet.

The situation came to a head on February 26, 2009, when D.S.'s mother, B.S., discovered that D.S. and her 14-year old female friend, A.A., were planning to meet Ambord and another male at noon on February 28, 2009, at the Galleria Mall in Roseville, and to later travel to a motel in Roseville so that Ambord and D.S. could have sex. D.S.'s mother uncovered a text message on D.S.'s cell phone in which Ambord talked about bringing condoms and a "dildo" to Roseville, along with the drug ecstasy, which Ambord said would help D.S. have more intense orgasms when they had intercourse together.

D.S.'s parents reported the matter to the Roseville Police Department, which referred the case to the Placer County Sheriff's Office. D.S.'s parents also grounded their daughter and forbid her from leaving the house while the matter was being investigated.

Ambord traveled to the Sacramento area to meet D.S. on or about February 28th. Ambord discovered that the police had been contacted and instead of going to Roseville, Ambord checked into a Motel 6 in midtown Sacramento. Ambord was unable to contact D.S. because of her parents' intervention. Ambord subsequently turned his attention

17

towards A.A. and contacted her via online instant messenger. Unbeknownst to Ambord, A.A.'s mother, A.W., was at the other end of the line.[1] A.W. pretended to be her daughter on the computer, and for the next three to four hours Ambord attempted to lure her to his hotel in midtown to have sex with him. Just like with D.S., Ambord's chats with A.A.'s mother were of a graphic sexual nature. Among other things, Ambord asked A.W. to sneak out and meet him, telling her that he wanted to "get up inside her." Near the end of their conversation, Ambord requests that A.A.'s mother view a live feed over a webcam from Ambord's hotel room. Ambord then proceeds to masturbate over the camera all the while making obscene comments to someone he believed to be a 14-year old girl. A.W. reported the matter to the Rocklin Police Department.

Ambord was subsequently arrested at his motel room on the morning of March 1st. Ambord was read his Miranda rights and in response to questioning admitted that: (1) he had engaged in numerous online communications with D.S. over a long period of time, during which the two often talked about sex; (2) he had bought a bus ticket to travel to Roseville to meet D.S. at the mall; and (3) that he had an online chat with A.A. the previous night from his hotel room.

Among other things, with him in his hotel room in Sacramento Ambord had a laptop computer, two flash drives, a cell phone, and a greyhound bus ticket. State search warrants were written for Ambord's computer, cell phone and two flash drives. As of this date, the Government has not been able to access Ambord's computer, as it is encrypted and password protected. Similarly, Ambord's flash drives contain "biometric locks," which require Ambord's fingerprint before they can be accessed.

---

[1] By this point, around 4:00 p.m. on February 28th, A.W. and B.S. had been in contact with each other and both parents knew of Ambord's intention to travel to Sacramento to spend time with their respective daughters.